NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LYNETTE BYRNES,<br><br>    Plaintiff,<br><br>v.<br><br>GREYSTONE PARK PSYCHIATRIC HOSPITAL, JAMES FREY (in his individual and official capacities), and JOHN & JANE DOES 1-10,<br><br>    Defendants. | Civil Action No.: 15-7934 (JLL) (JAD)<br><br>OPINION |

**LINARES**, District Judge.

This matter comes before the Court by way of the Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by John J. Hoffman, Acting Attorney General of New Jersey, by Christopher J. Kelly, Deputy Attorney General, on behalf of Defendants, Greystone Park Psychiatric Hospital ("Greystone") and James Frey ("Frey") (collectively "Defendants"). (ECF No. 13.) The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants in part the Motion to Dismiss.

**FACTUAL BACKGROUND**[1]

Plaintiff Lynnette Byrnes ("Plaintiff") was hired as an Assistant Supervisor of Education Services by Greystone in October 2011. (ECF No. 1 ("Compl.") ¶ 11.) Plaintiff had a positive

---
[1] This background is derived from Plaintiff's Amended Complaint, which the Court must accept as true at this stage of the proceedings. *See Winer Family Trust v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007).

performance record, and her supervisor, Gene D'Aquila, submitted a request to Human Resources concerning a promotion for Plaintiff in October 2013. (*Id.* ¶¶ 12, 13.)

On October 24, 2013, Plaintiff suffered a manic episode and was transported from Greystone to Morristown Memorial Hospital, where she received treatment. (*Id.* ¶¶ 14, 15.) Plaintiff was diagnosed with bipolar disorder, an alleged disability. (*Id.* ¶ 16.) Plaintiff was prescribed medication in order to manage and prevent further manic episodes related to her bipolar disorder. (*Id.* ¶ 19.) On October 31, 2013, Plaintiff was released to "return to work on full duty" by her psychiatrist. (*Id.* ¶ 20.) Plaintiff notified Greystone of her release and requested to return to work. (*Id.*)

Plaintiff returned to work on November 6, 2013. (*Id.* at ¶ 21.) That same day, Plaintiff met with Gene D'Aquila, Angela Chenowski (her union representative), Defendant James Frey (Employee Relations Officer), and Deborah Sharpe (human resources representative) ("Sharpe"). (*Id.*) During the meeting, Plaintiff was asked by Frey and Sharpe to provide a doctor's note concerning her release and ability to work without restrictions. (*Id.* ¶ 22.) Plaintiff was also asked a series of questions regarding her work performance at Greystone. (*Id.* ¶ 23.)

As requested, Plaintiff provided Greystone with a doctor's note releasing her to work. (*Id.* ¶ 24.) However, Frey and Sharpe instructed Plaintiff to "take a week off before returning to work." (*Id.* ¶ 25.) On or about November 13, 2013, and while Plaintiff was out of work on her week off, Plaintiff received a letter from Frey informing her that "her position as Assistant Supervisor of Education was terminated 'in accordance with CWA Contract Article 5.K.c.i.'" effective November 23, 2013. (*Id.* ¶ 26.) Plaintiff alleges that the at the time she was terminated, she could perform the essential functions of her job without accommodation. (*Id.* ¶ 27.)

2

## **PROCEDURAL HISTORY**

Asserting that she was terminated "in retaliation for her disability leave, and Defendants' fear of a perceived disability," Plaintiff filed a charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 12, 2013. (*Id.* ¶¶ 28-29.) Plaintiff was given a Notice of Right to Sue by the EEOC on September 23, 2015. (*Id.* ¶ 31.)

Plaintiff commenced this action on November 6, 2015 by filing a five count Complaint alleging violations of the Americans with Disabilities Act, 42. U.S.C. § 12112, *et seq.* ("ADA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:15-1, *et seq.* ("NJLAD"). (Compl.) Specifically, Count 1 alleges disability discrimination in violation of the ADA; Count 2 alleges perceived disability discrimination in violation of the ADA; Count 3 alleges disability discrimination in violation of the NJLAD; Count 4 alleges perceived disability discrimination in violation of the NJLAD; and Count 5 alleges "aiding & abetting" in violation of the NJLAD. (*Id.*) All counts are pleaded against "Defendants" generally. (*Id.*) In her prayer for relief (*see id.* at 10-11), Plaintiff "demands judgment against all Defendants, jointly and severally" and seeks in part the following: compensatory damages under the NJLAD (¶ a) and ADA (¶ d); punitive damages under the NJLAD (¶ c) and ADA (¶ e); back pay and future pay under the NJLAD (¶ b); and "[o]ther injunctive relief" (¶ k.)

On December 9, 2015, upon direction by the Court, Plaintiff filed a request for an entry of default against Defendants in accordance with Rule 55(b)(2)(B) of the Federal Rules of Civil Procedure. (ECF No. 7.) The Clerk entered default against Defendants on December 10, 2015, and Plaintiff filed a motion for default judgment on December 21, 2015. (ECF No. 9.) However, the parties agreed to a stipulation vacating the entries of default against Defendants, which the

Court "so ordered" on December 29, 2015. (ECF No. 12.)

Defendants filed a Motion to Dismiss, in lieu of an Answer, pursuant to Federal Rule of Civil Procedure 12(b)(6) on January 18, 2016. (ECF. No. 13 ("Mov. Br.")) Greystone moves to dismiss Counts 1 and 2; Frey moves to dismiss all counts (1-5). Plaintiff filed opposition on March 7, 2016.[2] (ECF No. 15 ("Opp. Br.").) Defendant filed a reply on March 14, 2016. (ECF No. 16 ("Reply Br.").) The matter is now ripe for resolution.

## LEGAL STANDARD

To withstand a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the court must take three steps: first, the court must take note of the elements a plaintiff must plead to state a claim; second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly

---

[2] Plaintiff argues that the Motion to Dismiss should be denied, but also seeks leave to amend in the event the Motion to Dismiss is granted. (Opp. Br. at 14-15.)

give rise to an entitlement for relief. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

The Court's role is not to determine whether the non-moving party "will ultimately prevail" but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). The Court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

## ANALYSIS

For the reasons below, the Court grants in part the Motion to Dismiss.

### A. Americans with Disabilities Act

To establish a prima facie case of disability discrimination under the ADA, a plaintiff must show "(1) that he is disabled within the meaning of the ADA, (2) that he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that he was subjected to an adverse employment decision as a result of discrimination." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010) (citation omitted). An individual is disabled if he has, or is perceived to have, a physical or mental impairment that substantially limits one or more of the major life activities of such individual. *See* 42 U.S.C. § 12102(1) (2009).

Plaintiff alleges in the Complaint that Defendants violated the ADA by engaging in

disability discrimination (Count 1) and perceived disability discrimination (Count 2). Plaintiff asserts that her bipolar disorder is a "mental impairment that substantially limits one or more . . . major life activities," but that she can "perform the essential functions of her employment position." (Compl. ¶¶ 33-34.) Plaintiff specifically alleges that she was terminated by Defendants because of her disability and use of disability leave. (*Id.* ¶ 36.) Plaintiff further asserts that, though she could have performed the essential functions of her job at the time of termination, Defendants' perceived belief regarding her bipolar disorder was the cause of her termination. (*Id.* ¶¶ 39-40.)

Defendants move to dismiss the ADA claims on separate grounds. Greystone argues that it is immune from suit under the Eleventh Amendment because "State Psychiatric Hospitals in New Jersey are arms of the State," and therefore entitled to sovereign immunity under the Eleventh Amendment. (Mov. Br. at 2-3.) Frey argues that the ADA claims must be dismissed as to him because the "ADA does not provide for individual liability." (*Id.* at 3.) In opposition, Plaintiff does not directly address Greystone's argument, but asserts that she is permitted to state a claim for prospective injunctive relief against Frey in his official capacity pursuant to *Ex Parte Young*.

The Court grants the motion to dismiss in part, to the extent it seeks relief against Greystone or to the extent it seeks relief beyond prospective injunctive relief against Frey in his official capacity. The Court need not belabor the point. Plaintiff herself concedes that the relief available to her under the ADA is limited, (*see* Opp. Br. at 5-7), and it is clear that the relief requested in the Complaint is too broad. Plaintiff seeks both monetary damages and injunctive relief, jointly and severally against Defendants generally for violating the ADA. (*See* Compl. at 10-11.) However, as Plaintiff notes, she can only seek prospective injunctive relief against Frey in his official

capacity under the ADA.[3] Accordingly, Counts 1 and 2 of the Complaint shall be dismissed with prejudice as to Greystone. Furthermore, although the Court concludes that the Complaint states a claim for relief against Frey in his official capacity, prayers relief under the ADA that extend beyond prospective injunctive relief with respect to Frey are dismissed with prejudice.

### B. New Jersey Law Against Discrimination

Similar to the ADA, to establish a prima facie case of disability discrimination under the NJLAD, a plaintiff must show that "(1) she was disabled within the meaning of the statute; (2) she was qualified to perform the essential functions of the position of employment; and (3) she suffered an adverse employment action because of the disability." *Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 235-36 (D.N.J. 2015) (citing *Jones v. Sch. Dist.*, 198 F.3d 403, 411 (3d Cir. 1999); *Victor v. State*, 401 N.J. Super. 596, 952 A.2d 493, 504 (2008)).

Plaintiff alleges that Defendants violated the NJLAD by engaging in disability discrimination (Count 3), perceived disability discrimination (Count 4), and aiding & abetting (Count 5). Specifically, Plaintiff alleges that her termination "would not have occurred but for" her bipolar disorder, a disability under the LAD. (Compl. ¶¶ 42, 45 (Count 3).) Additionally, Plaintiff asserts that Defendants' perception of Plaintiff's disability was the reason for her termination and, but for that perception, Plaintiff would not have been terminated. (*Id.* at ¶¶ 48, 50 (Count 4).) Further, Plaintiff alleges that "Defendants, its administrators, upper-management and/or supervisors wrongfully aided and abetted Defendants co-employees, administration, and

---

[3] In short, under the ADA, Greystone is immune from suit under the Eleventh Amendment because it is an "arm of the state," while Frey cannot be held liable in his individual capacity. *See generally Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161 (3d Cir. 2002) (explaining contours of Eleventh Amendment immunity); *Dept. of Envtl. Protection v. Gloucester Envtl. Mgmt. Servs.*, 923 F. Supp. 651, 660 (D.N.J. 1995) (concluding that state psychiatric hospitals are arms of the state); *Emerson v. Thiel Coll.*, 296 F.3d 184, 189 (3d Cir. 2002) (noting approvingly that other courts of appeals have held that "individuals are not liable under Titles I and II of the ADA").

upper-management in its unlawful, discriminatory treatment of Plaintiff" in violation of the NJLAD. (*Id.* ¶ 52 (Count 5).)

Defendants move to dismiss the NJLAD claims against Frey only. (*See* Mov. Br. at 4-9.) First, Frey argues that the Counts 3 and 4 must be dismissed as to him because there is no individual liability under the NJLAD, absent proof that the individual was aiding and abetting discrimination by the employer. (*Id.* at 4-5.) Second, Frey argues that Count 5 (aiding and abetting) must be dismissed because the facts as alleged do not give rise to a claim against him, and also because an individual cannot aid and abet his own conduct. (*Id.* at 5-9.) In opposition, Plaintiff argues that there is in fact individual liability under the NJLAD, as demonstrated by the plain language of the statute, its broad, remedial purpose, and relevant case law. (Opp. Br. at 7-14.)

Although the Complaint fails to indicate the specific sections of the NJLAD that are being invoked for relief, the Court finds that Counts 3 and 4 must be dismissed as to Frey, but finds that Count 5 sufficiently states a claim against him. Counts 3 and 4 must be dismissed as to Frey because the Court finds that there is no direct individual liability under the NJLAD, specifically N.J.S.A. § 10:5–12a. Subsection a prohibits discrimination by "an employer." *Id.* The New Jersey Supreme Court has indicated that an individual supervisor is not an "employer" under the NJLAD and may not be held personally liable as such. *See Tarr v. Ciasulli*, 181 N.J. 70, 82-85 (2004). In contrast, subsection e makes it unlawful "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden [under the NJLAD]." N.J.S.A. § 10:5–12e. As the New Jersey Supreme Court has held, "individual liability of a supervisor for acts of discrimination or for creating or maintaining a hostile environment can *only* arise through the 'aiding and abetting' mechanism that applies to 'any person.'" *Cicchetti v.*

8

*Morris Cty. Sheriff's Office*, 194 N.J. 563, 594 (2008) (emphasis added). Accordingly, to the extent Counts 3 and 4 are premised on a violation of N.J.S.A. § 10:5–12a, as opposed to N.J.S.A. § 10:5–12e, they are dismissed with prejudice as they pertain to Frey. The Court next addresses the sufficiency of Count 5.

In order to hold an employee liable as an aider or abettor under N.J.S.A. § 10:5–12e, a plaintiff must show that "'(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation.'" *Tarr*, 181 N.J. at 84 (citing *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 127 (3d Cir. 1999)) (citations omitted); *see also Cicchetti*, 194 N.J. at 594 (reiterating standard).

The Court finds that Count 5 sufficiently states a cause of action under N.J.S.A. § 10:5–12e against Frey. In essence, the Complaint alleges that Frey aided Greystone in the alleged discrimination by directing Plaintiff to take a week off of work despite the fact that she had provided a doctor's note approving her return, and then by mailing Plaintiff a letter terminating her position because of her disability. When viewed holistically and in a light most favorable to Plaintiff, the Complaint sufficiently alleges facts to establish a prima facie violation of N.J.S.A. § 10:5–12e.[4] Thus, the motion to dismiss Count 5 is denied and the claim shall proceed.

---

[4] Frey also argues that he cannot be held liable as an aider or abettor because the only bad conduct alleged is his own, and he cannot logically aid or abet his own actions. (Reply Br. at 4-5.) The Court disagrees. As previously noted, it is this Court's view that a principal wrongdoer can be held liable for aiding and abetting his own conduct under the NJLAD. *See Godfrey v. Thermco*, No. 13-4750 JLL, 2013 WL 5952046 (D.N.J. Nov. 4, 2013) (citing *Rowan v. Hartford Plaza Ltd.*, No. A-0107-11T3, 2013 WL 1350095, at *6-8 (N.J. Super. Ct. App. Div. Apr. 5, 2013)). Although it is an "awkward theory" to permit individual liability for aiding and abetting one's own conduct, to hold otherwise would undermine the NJLAD's broad and remedial purpose. *Id.*

## **CONCLUSION**

For the reasons above, the Court grants in part the Motion to Dismiss. An appropriate Order accompanies this Opinion.

DATED: March 22, 2016

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE